**PELTON & ASSOCIATES PC**
Brent E. Pelton (BP 1055)
pelton@peltonlaw.com
Taylor B. Graham (TG 9607)
graham@peltonlaw.com
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltonlaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ROGELIO CARTY, Individually and on Behalf of All Others Similarly Situated,**<br><br>  **Plaintiff,**<br><br>-against-<br><br>**FAST ELECTRIC SERVICES INC., AKRO GENERAL CONTRACTING INC., PJP INSTALLERS INC., R. S. C. OF NY CORP. d/b/a ROCK SCAFFOLDING, NATANAEL ACOSTA, Jointly and Severally,**<br><br>  **Defendants.** | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Rogelio Carty ("Carty" or "Plaintiff"), individually and on behalf of all others similarly situated, as class representative, upon personal knowledge as to himself and upon information and belief as to other matters, alleges as follows:

1

## NATURE OF THE ACTION

1.      Plaintiff is an electrician who worked for Defendants' electrical contractor business providing installations and repair to electrical systems on public and private projects throughout the New York City region.  For his work, Plaintiff was paid in cash at straight-time rates for all hours worked, including hours worked over 40 hours in a given workweek. In addition, when working on prevailing wage projects, Plaintiff was required to give Defendants "kickbacks" from his prevailing wages such that he would earn the same non-prevailing wage rate for all hours, including hours worked on prevailing wage projects.

2.      Plaintiff brings this action to recover unpaid overtime premium pay owed to him pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.*, and supporting regulations, and to recover prevailing wages Defendants required Plaintiffs to pay back to Defendants as kickbacks when working on prevailing wage projects pursuant to NYLL, §198-b *et seq.*

3.      Plaintiff also brings claims for failure to provide wage notices and proper wage statements pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

4.      Plaintiff brings his FLSA claims on behalf of himself and all other similarly situated employees of Defendants and his NYLL claims on behalf of himself and a Federal Rule of Civil Procedure 23 class of all electricians, foremen, and all other hourly employees working for Defendants in New York.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiff's claims under the

FLSA pursuant to 29 U.S.C. § 216(b).

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district.

7.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiff:**

8.     Plaintiff Rogelio Carty was, at all relevant times, an adult residing in Queens County, New York.

9.     Throughout the relevant time period, Carty performed work for Defendants on both private and public projects ("Public Works Projects") throughout the New York City area.

10.    Carty consents in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b), and his written consent form is attached hereto and incorporated by reference.

**Defendants:**

11.    Upon information and belief, Fast Electric Services Inc. ("Fast Electric") is an active New York Corporation with its principle place of business at 105-25 92nd Street, Ozone Park, New York 11417.

12.    Upon information and belief, Akro General Contracting, Inc. ("Akro") is an active New York Corporation with its principle place of business at 237 Kent Street, Brooklyn, New York 11222.

13.    Upon information and belief, PJP Installers, Inc. ("PJP") is an active New York Corporation with its principle place of business at 2800 Bruckner Blvd., Suite 201-9, Bronx, New York 10465.

14.     Upon information and belief, R.S.C. of NY Corp. ("Rock Scaffolding") is an active New York Corporation with its principle place of business at 414 E 175th Street, Bronx, New York 10457.

15.     Fast Electric, Akro, PJP and Rock Scaffolding are hereinafter collectively referred to as the "Corporate Defendants."

16.     Upon information and belief, Akro, PJP and Rock Scaffolding were, at all relevant times, general contractors on certain public works projects with whom Fast Electric contracted to provide electrical work.

17.     Upon information and belief, Defendant Natanael Acosta ("Acosta") is the owner and operator of Fast Electric who sets the company's payroll policies, including the unlawful practices complained of herein.  Throughout the relevant time period, upon information and belief, Acosta was in charge of determining Fast Electric's policies with respect to payroll for both private and Public Works Projects, and otherwise running the business of Fast Electric.

18.     Acosta is hereinafter referred to as the "Individual Defendant" and, collectively with the Corporate Defendants, the "Defendants."

19.     The Individual Defendant participated in the day-to-day operations of Fast Electric and acted intentionally and maliciously in their direction and control of Plaintiff and the Corporate Defendants' other similarly situated employees, and are an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d) and regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and are jointly and severally liable with the Corporate Defendants.

20.     At all relevant times, Defendants have been and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce, within the

meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

21.     At all relevant times, Defendants employed, and/or continue to employ, Plaintiff and each of the Collective Action members within the meaning of the FLSA.

22.     At all relevant times, Plaintiff, the opt-in plaintiffs and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

23.     Upon information and belief, at all relevant times, the Corporate Defendants have had gross revenues in excess of $500,000.00.

## COLLECTIVE ACTION ALLEGATIONS

24.     Pursuant to 29 U.S.C. § 207, Plaintiff brings his First Cause of Action as a collective action under the FLSA on behalf of himself and the following collective:

> All persons employed by Defendants at any time since February 26, 2013 and through the entry of judgment in this case (the "Collective Action Period") who worked as electricians, laborers, foremen and all other hourly employees (the "Collective Action Members").

25.     A collective action is appropriate in this circumstance because Plaintiff and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policy of failing to pay overtime premiums for work performed in excess of forty (40) hours each week.  As a result of this policy, Plaintiff and the Collective Action Members did not receive the legally-required overtime premium payments for all hours worked in excess of forty (40) hours per week.

26.     Plaintiff and the Collective Action Members had substantially similar job duties, work schedules, and were paid by Defendants pursuant to the same or substantially similar payment structure.

## CLASS ACTION ALLEGATIONS

27.     Pursuant to the NYLL, Plaintiff brings his Second through Seventh Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and the following class:

> All persons employed by Defendants in New York at any time since February 26, 2010 and through the entry of judgment in this case (the "Class Period") who worked as electricians, laborers, foremen and all other hourly employees (the "Class Members").

28.     The Class Members are readily ascertainable.   The number and identity of the Class Members are determinable from the records of Defendants.   For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants.   Notice can be provided by means permissible under Rule 23.

29.     The Class Members are so numerous that joinder of all members is impracticable.

30.     Upon information and belief, there are in excess of forty (40) Class Members.

31.     Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members. Such common questions will determine Defendants' liability to all (or nearly all) Class Members.   Common questions include:

a.      whether Defendants employed Plaintiff and the Class Members within the meaning of the NYLL;

b.      whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiff and the Class Members;

c.      what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

d.      whether Defendants failed and/or refused to pay Plaintiff and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

e.      whether Defendants breached their contracts with certain government agencies by failing to pay Plaintiff and the Class Members the prevailing wages for work performed pursuant to such contracts;

f.      whether Defendants breached their contracts with certain government agencies by failing to pay Plaintiffs and the Class Members the prevailing wage supplemental benefits for work performed pursuant to such contracts;

g.      whether Defendants breached their contracts with certain government agencies by failing to pay Plaintiff and the Class Members the prevailing wage overtime premiums for work performed in excess of eight (8) hours in a day and for weekend work;

h.      whether the Defendants had a policy of demanding and receiving kickbacks from Plaintiffs and the Class by requiring them to pay Defendants their prevailing wages earned while providing labor on public works projects;

h.      whether Defendants failed to provide proper wage notice to Plaintiff and Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

i.      whether Defendants failed to furnish to Plaintiff and the Class Members a statement of wages, hours worked, rates paid and gross wages, as required by the NYLL; and

j.      whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

32.     The answer to these questions would drive resolution of the litigation.  If a judge

and/or jury agrees with Plaintiff on these issues, Defendants would be liable to all Class Members for their NYLL wage and hour violations.

33.     <u>Plaintiff's claims are typical of the Class Members' claims</u>. Plaintiff, like all Class Members, is a non-management employee of Defendants who worked for Defendants pursuant to their corporate policies.  Plaintiff, like all Class Members, was, *inter alia*, not paid overtime premium pay for hours worked over forty (40) hours in a given workweek and did not receive proper wage statements and wage notices.  If Defendants are liable to Plaintiff for the claims enumerated in this Complaint, they are also liable to all Class Members.

34.     <u>Plaintiff and his Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiff and the Class Members, and Plaintiff brings this lawsuit out of a desire to help all Class Members, not merely out of a desire to recover her own damages.

35.     Plaintiff's counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

36.     <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>. Defendants are sophisticated parties with substantial resources. The individual plaintiff lacks the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

37.     The individual members of the Class have no interest or capacity to bring separate actions; Plaintiff is unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF THE FACTS

**Defendants' Companies**

38.     At all relevant times, Defendant Fast Electric has been in the construction and electrical contracting business.

39.     Akro's filings with the New York State Department of State, Division of Corporations lists Defendant Kostika as Akro's Chief Executive Officer.

40.     PJP's filings with the New York State Department of State, Division of Corporations lists Defendant Perrone as PJP's Chief Executive Officer.

41.     Rock Scaffolding's filings with the New York State Department of State, Division of Corporations lists Defendant Singh as Rock Scaffolding's Chief Executive Officer.

42.     Upon information and belief, Defendants Kostikas and Perrone were regularly present at the Public Works Projects to oversee the work of Plaintiff and Fast Electric's other employees.

43.     During all relevant times, Defendant Fast Electric contracted with one or more of the corporate defendants (i.e. Akro, PJP and Rock Scaffolding) to provide electrical installation work in connection with the contracts entered into by Akro, PJP, and/or Rock Scaffolding for work on behalf of NYCHA or other public entities.

**Defendants' Prevailing Wage Projects**

44.     Upon information and belief, Defendants have entered into certain contracts, as either a subcontractor or prime contractor, with certain government agencies including the New York City Housing Authority ("NYCHA"), or with prime contractors not currently known, to furnish labor, material and equipment to perform work on these Public Works Projects.

45.     Upon information and belief, among other Public Works Projects, Fast Electric

entered into a contract to perform work as a subcontractor with NYCHA, with Akron as the prime contractor.  Upon information and belief, this particular contract was for a NYCHA project, contract number: BW1128079  (the "NYCHA Project").

46.     Upon information and belief, Fast Electric entered into certain contracts to perform work as a subcontractor for certain Public Works Projects, with Akron, PJP and Rock Scaffolding as the prime contractors.

47.     Upon information and belief, Plaintiff and other employees of Fast Electric working on the NYCHA Project, performed work at various NYCHA housing developments throughout New York City including, among others, the Hammel Houses in Far Rockaway, the Parkside Housing Project in Bronx, the East New York City Line Housing Development in Cypress Hills, Brooklyn, and the Gowanus Houses in Brooklyn.

48.     Upon information and belief, the contracts for these Public Works Projects required that Defendants pay and ensure payment of the prevailing rates of wages and supplements to all workers furnishing labor on the sites of the Public Works Projects, including their direct employees and all other persons furnishing labor on the sites of the Public Works Projects.  Upon information and belief, the public works contracts also provided that any subcontracts that Defendants entered into contain language requiring the payment of prevailing rates of wages and supplements to all workers furnishing labor on the sites of the Public Works Projects.

49.     As required by law, a schedule containing the prevailing rates of wages and supplemental benefits ("Prevailing Wage Schedule") to be paid to Plaintiff should have been annexed to and formed as part of the public works contracts.  If not annexed to the public works contracts, these schedules were expressly or impliedly incorporated into the contracts as a matter

of law and/or public policy.

50.     The promise to pay and ensure payment of the prevailing wage and supplemental benefit rated in the public works contracts was made for the benefit of all workers furnishing labor on the sites of the Public Works Projects and, as such, the workers furnishing labor on the sites of the Public Works Projects are the beneficiaries of that promise and the contracts entered into between Defendants and governmental agencies.

**Plaintiff's Work for Defendants**

51.     Plaintiff Carty worked for Fast Electric as an electrician from in or around December 2011 through in or around December 2014 (the "Carty Employment Period").

52.     At the beginning of the Carty Employment Period, Plaintiff Carty was typically scheduled to work approximately between three and four (3-4) days per week, from approximately 7:00 am through approximately between 8:00 pm and 3:00 am, for a total of between approximately forty (40) and fifty (50) hours per week.  During approximately the last eight (8) months of the Carty Employment Period, Carty was scheduled to work five (5) days per week from approximately 7:00 am until approximately 7:00 pm, for a total of approximately sixty (60) hours per week.

53.     Throughout the Carty Employment Period, Carty worked on certain Public Works Projects at least once a month, with Fast Electric as the subcontractor and certain other companies as general contractors, including Akro, PJP and Rock Scaffolding.

54.     Plaintiff was aware that Fast Electric was a sub-contractor to Akro, PJP and Rock Scaffolding on the Public Works Projects because Defendant Acosta would inform him of the addresses and general contractor's name for each of the projects that Plaintiff had to drive to perform electrical work.

55.     When working on the NYCHA Project, as a subcontractor to Akro, Plaintiff was issued his prevailing wage checks by Akro instead of by Fast Electric.

56.     Upon information and belief, Plaintiff was issued checks by other general contractors for his work on the public works projects, but was required to cash these checks and provide "kickbacks" to his supervisor at Fast Electric.

57.     While working on certain Public Works Projects, including the NYCHA Project, Carty was required to sign in and out on time sheets which provided the hours that Carty started and finished work and his classification as an "A" electrician.

58.     At the beginning of the Carty Employment Period, for his work, Carty was paid approximately $12.00 per hour which was periodically increased through his employment period to a final wage of $16.00 per hour.  Throughout most of the Carty Employment Period, Carty was paid entirely in cash, except approximately the last 6 months of his employment, when he was paid with a combination of check and cash.

59.     Notwithstanding the fact that Carty typically worked at least 40 hours per week including as much as 60 hours in a week, Carty never received overtime premium pay equal to one and one-half (1.5) times his regular hourly wage.  Defendants' failure to pay Carty overtime premium pay for his hours worked in excess of forty (40) in a given workweek was a corporate policy of Defendants that applied to all of Defendants' electrician laborers, foreman, and other hourly employees.

60.     During the Carty Employment Period with Defendants, Plaintiff primarily performed work on NYCHA Projects in New York City.

61.     Throughout most of the Carty Employment Period, Plaintiff performed various types of electrical work in scaffold projects including, but not limited to, installing (running and

terminating new wires) low and high-voltage electrical conduit, lighting fixtures, etc.

62.     Upon information and belief, in furtherance of the public works contracts entered into by Defendants, Plaintiff and the members of the putative Collective Action and Class performed various types of electrical work including, but not limited to, installing (running and terminating new wires) low and high-voltage electrical conduit, lighting fixtures.

63.     For his work on the Public Works Projects, Defendants required Plaintiff to cash his prevailing wage check and give the wages back to Defendants as "kickbacks" so that they could pay him for all hours worked on both the Public Works Projects and private jobs. Defendants thus paid Plaintiff at his regular hourly rate of approximately $12.00 - $16.00 per hour for all hours worked, including hours in excess of forty (40) hours per week and hours worked on Public Works Projects over eight (8) hours per day and/or weekend hours. Defendants thus failed to pay Plaintiff the prevailing rate of wages, overtime wages, and supplemental benefits as required by the New York City Prevailing Wage Schedules for his work on the Public Works Projects.

64.     Notwithstanding the fact that Plaintiff was always paid approximately $12.00 - $16.00 per hour in cash for all hours worked, he was instructed by Defendants that if anyone from the "city" should ask how much they are paid, they should say that they are paid the correct prevailing wages of approximately $98.00 per hour.

65.     Upon information and belief, all other employees of Fast Electric were also required to cash their prevailing wage checks and give it back to Defendants as "kickbacks" in order to get paid for all hours worked, including hours worked on the Public Works Projects, at their regular hourly rate.

66.     Defendants did not provide Plaintiff or Class Members with a proper wage notice

at the time of hire or on February 1 or each year, or wage statement(s) with every payment of wages.

67.    Plaintiff's work was performed in the normal course of Defendants' business and was integrated into the business of Defendants.

68.    Defendants have simultaneously employed other individuals like Plaintiff during the relevant time periods and continuing until today, to perform work as electricians at Defendants' work sites.  As stated, the exact number of such individuals is presently unknown but within the sole knowledge of Defendants and can be ascertained through discovery.

**Defendants' Unlawful Corporate Policies**

69.    Like Plaintiff, Defendants' other employees were required to work for Defendants in excess of forty (40) hours each week, yet Defendants failed to pay Plaintiff and their other employees overtime compensation for hours worked in excess of forty (40) hours per workweek. This refusal to pay Plaintiff and Defendants' other employees overtime compensation for hours worked in excess of forty (40) in a given week was a corporate policy of Defendants that applied to all of Defendants' hourly employees.

70.    Defendants entered into contracts with public entities which obligated Defendants to pay Plaintiffs and the Class Members at or above the local prevailing wage rates, including any required supplementary benefits and overtime premiums for hours worked in excess of forty (40) per week, eight (8) hours per day, and hours worked on Saturday and Sunday.  Defendants' failure to pay Plaintiff these prevailing wage rates, supplementary benefits, and overtime premiums was a corporate policy that also applied to all of Defendants' other similarly situated employees.

71.    Defendants did not provide Plaintiff or Class Members with a proper wage notice

at the time of hire or on February 1 or each year, or wage statement(s) with every payment of wages.  Defendants' failure to provide proper wage notice and wage statements was a corporate policy of Defendants which applied to all of their employees throughout the Class Period.

72.     As employees of Defendants who were assigned to work on Defendants' publicly financed projects, Plaintiff and the Class Members were intended third-party beneficiaries of Defendants' public works contracts.

73.     Defendants failed to pay Plaintiff and the Class Members at the appropriate prevailing wage rates for their publicly financed contracts, yet upon information and belief, Defendants were compensated under these contracts as though they had paid the appropriate prevailing wage rates to Plaintiff and the members of the collective action.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought On Behalf of Plaintiff and the Collective Action Members)**

74.     Plaintiff, on behalf of himself and the Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

75.     By failing to pay overtime at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

76.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

77.     Defendants' failure to pay overtime caused Plaintiff and the Collective Action Members to suffer loss of wages and interest thereon.  Plaintiff and the Collective Action

Members are entitled to recover from Defendants his unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
## NEW YORK LABOR LAW – UNPAID OVERTIME
### (Brought On Behalf of Plaintiff and the Class Members)

78.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

79.     Defendants willfully violated Plaintiff's and Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

80.     Defendants' failure to pay overtime premium compensation caused Plaintiff and the Class Members to suffer loss of wages and interest thereon.  Plaintiff and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

## THIRD CAUSE OF ACTION
## NEW YORK LABOR LAW – WAGE NOTICE VIOLATIONS
### (Brought On Behalf of Plaintiff and the Class Members)

81.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

82.     Defendants have willfully failed to supply Plaintiff and the Class Members notice as required by Article 6, § 195, in English or in the language identified by Plaintiff and the Class

Members as their primary language, containing Plaintiff's and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable;  the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

83.     Due to Defendants' violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants fifty dollars ($50) per employee for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq*., liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – WAGE STATEMENT VIOLATIONS**
**(Brought On Behalf of Plaintiff and the Class Members)**

84.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

85.     Defendants have willfully failed to supply Plaintiff and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195, containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime

rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

86.     Due to Defendants' violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendants one hundred dollars ($100) per employee for each workweek that the violations occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**FIFTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – ILLEGAL KICKBACKS**
**(Brought On Behalf of Plaintiff and the Class Members)**

81.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

82.     Defendants required Plaintiff and the Class Members to pay Defendants a portion of their prevailing wages, in violation of New York Labor Law § 198-b.

83.     Defendants' failure to comply with New York Labor law's prohibition on kickbacks caused the Plaintiffs and the Class Members to suffer loss of wages and interest thereon.

**SIXTH CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(Brought On Behalf of Plaintiff and the Class Members)**

87.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

88.     Upon information and belief, the public works contracts entered into by

Defendants contained schedules of the prevailing rates of wages and supplemental benefits to be paid to Plaintiff and the employees performing work pursuant to such contracts.

89.     Those prevailing rates of wages and supplemental benefits were made part of the public works contracts for the benefit of Plaintiff and the other employees performing work pursuant to such contracts.

90.     Defendants' failure to pay Plaintiff at the correct prevailing wage rates for straight time, overtime, and supplemental benefits for work performed on Public Works Projects constituted a material breach of the contracts entered into between Defendants and certain public entities.

91.     As a result of Defendants' failure to pay Plaintiff at prevailing wage rates, they are entitled to relief from Defendants for breach of contract under New York common law of contracts.

**SEVENTH CAUSE OF ACTION**
**UNJUST ENRICHMENT & QUANTUM MERUIT**
**(Pled In The Alternative)**
**(Brought On Behalf of Plaintiff and the Class Members)**

92.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

93.     Based on Defendants' failure to pay Plaintiff the appropriate prevailing wage rates, Defendants were unjustly enriched at the expense of Plaintiff.

94.     Equity and good conscience require that Defendants pay restitution to Plaintiff.

95.     Upon information and belief, when Defendants entered into the public works contracts, they agreed to pay the required prevailing wages, overtime, shift-differential and holiday premiums, and supplemental benefit rates of pay to Plaintiff and other employees who

performed work pursuant to these contracts.

96.     Plaintiff provided valuable services to Defendants on prevailing wage projects for which Plaintiff expected compensation.  Defendants knowingly accepted such services yet failed to pay Plaintiff the reasonable value of such services as defined by the New York City prevailing wage schedules.

97.     As a result of Defendants' failure to pay Plaintiff at prevailing wage rates on prevailing wage jobs and Defendants' corresponding unjust enrichment, Plaintiff is entitled to relief from Defendants under New York's common law of unjust enrichment.

98.     As a result of Defendants' failure to pay Plaintiff the reasonable value of the valuable services they rendered, Plaintiff is entitled to relief from Defendants under New York's common law of quantum meruit.

### PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of himself and all other similarly situated Collective Action Members and Class Members, respectfully requests that this Court grant the following relief:

a. Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and his counsel to represent the Collective Action Members;

b.  Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiff and his counsel to represent the Class;

c.  An order tolling the statute of limitations;

d.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.  An award of compensatory damages as a result of Defendants' failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

f.  An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.  An order declaring that Defendants are guilty of unjust enrichment and breach of contract under New York common law;

h.  An award of wages at the required prevailing wage rate, along with daily overtime premiums, weekend premiums, supplemental benefits and such other benefits required to be paid to Plaintiff pursuant to Defendants' contracts with public entities;

i.  Fifty dollars ($50) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, or a total of twenty-five hundred dollars ($2,500) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

j.  One hundred dollars ($100) per Plaintiff and each of the Class Members for each workweek that the violations of NYLL, Article 6 § 195 occurred or continue to occur, or a total of twenty-five hundred dollars per Plaintiff and each of the Class Members

as provided for by NYLL, Article 6 § 198(1)-d;

k. An injunction against the Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

l. An award of prejudgment and post-judgment interest;

m. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

n. Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.


Dated: New York, New York
February 26, 2016

**PELTON & ASSOCIATES PC**

By: _____
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiff, the putative collective and class*

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal bajo la Ley Federal de Normas Razonables de Trabajo y/o las normas laborales del Estado de Nueva York arriba mencionadas, en mi nombre y representación en contra de Fast Electric Services, Inc. y/o Fast Lights, Inc. y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados (el "Empleador"). Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en como debe llevarse a cabo este litigio, y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton & Associates PC sin tener que pagar por adelantado costas u honorarios de abogados. Yo entiendo que si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en juicio. Yo entiendo que mis Abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los Abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____   7/9/2015    ROGELIO CARTY
Firma                     Fecha        Nombre Escrito